SHERWOOD PATTERSON v. JOHN McIVER and another.

*Judge's Charge—Goods delivered to be sold on account—Negligence.*

1. If a party be entitled to the special instructions asked, it is sufficient if the court give them in substance.

2. Where goods are received by defendant to sell on account of plaintiff, and are lost, the plaintiff is entitled to recover their value, unless the defendant used due diligence in taking care of them. But if the goods were received and held by defendant simply for accommodation of plaintiff, the defendant would be liable only for gross negligence.

(*Brink* v. *Black*, 77 N. C., 59; *Kinney* v. *Laughenour*, 89 N. C., 365; *Long* v. *Pool*, 68 N. C., 479, cited and approved).

CIVIL ACTION tried at December Special Term, 1883, of MOORE Superior Court, before *MacRae, J.*

This action was commenced in the court of a justice of the peace against McIver & Dalrymple, partners in trade, doing business in the town of Jonesboro, to recover the value of a bale of cotton.

The plaintiff alleged that in December, 1881, he, by his agent Nathan Underwood, delivered a bale of cotton weighing about 630 pounds to the defendants, and of the value of $69.30, to be

by them sold as soon as the price of cotton reached eleven cents a pound; that the price soon thereafter advanced to said sum, and plaintiff has demanded a settlement of the defendants; that he was informed by them that the cotton was not on hand, and after diligent search could not be found. Wherefore he demands judgment, &c.

The defendants denied the right of the plaintiff to recover, on the ground they did not consider that the cotton was delivered to them.

Upon the trial before the justice of the peace, judgment was rendered in favor of plaintiff, and the defendants appealed to the superior court.

In the superior court the following issues were submitted:

1. Did defendants receive one bale of cotton to sell on account of plaintiff in 1881? Answer—Yes.

2. Have defendants settled for the same? Answer—No.

3. What damages is plaintiff entitled to recover? Answer—$60 with interest from January 1, 1882.

The plaintiff testified in substance that he was a customer of defendants and owed them for guano, and had carried them two bales of cotton and settled his account. He told the defendant Dalrymple that he had two other bales he would send, and did send one of them by one Stephens, for which the defendants had settled with him. He afterwards sent the other by said Underwood, and, on going to the defendants' store soon after, said to one of defendants' clerks, "If cotton gets to eleven cents, I want you to sell my cotton." Neither of the defendants was present on that occasion. The next time he was there, he saw Dalrymple and asked him if he had sold his cotton, and his reply was that he had not, because the prospect was good for cotton to advance, and that he had not sold his own, and did not like to sell the cotton of others when he would not sell his own. The plaintiff then said he would return in about two weeks, and after some conversation in reference to price, told Dalrymple to use his own judgment. Dalrymple asked if the bale had been

weighed, and the plaintiff informed him that it had not, and thereupon they went to look for it, but were unable to find it. Dalrymple remembered that the bale was brought by Underwood. Plaintiff further testified that he sent the cotton to them to sell as they would their own, and that pay for their services was not mentioned.

Underwood, the plaintiff's agent, testified that the bale weighed over six hundred pounds, and when he informed Dalrymple he had brought it, the latter said, "all right, I'll go with you in a minute," and he did go with the witness and they put the bale on the platform, where cotton brought to that market was usually placed, and witness told him in reply to a question as to what the plaintiff Patterson said about the cotton, that the plaintiff would be there in a few days. Witness did not know whether the defendant marked the bale, but it was marked at the gin "S. P."

The defendant Dalrymple testified in substance that the platform belonged to the merchants and the railroad company (Cape Fear and Yadkin Valley), and he was there buying cotton when Underwood brought the bale in question, and he told the employee to set the bale aside that it might be out of the way; there were a number of persons with their wagons near the platform at the time; plaintiff was there two or three times afterwards, and said nothing about the cotton: that he was told by his clerk that plaintiff wanted his cotton sold when the price reached eleven cents a pound; that he sampled the same and it was not up to grade, and he so informed the plaintiff; that he considered it a friendly act to look after the plaintiff's cotton and sell it for him, but had no authority to sell unless he could get eleven cents; and that he took the same care of plaintiff's as he did of his own cotton. He further testified that the other bale was not marked in defendants' name until the day this bale was missing.

The defendants asked for the following special instructions:

1. If cotton was placed by plaintiff or his agent on the plat-

form and remained to be weighed and was not to be sold by defendant until they could realize eleven cents a pound for it, then the cotton was still in the possession and under the control of plaintiff, and there was no sale and delivery to defendants, and thereupon plaintiff could not recover.

2. If the cotton was delivered to defendants to sell for plaintiff when eleven cents a pound could be got for it, for which selling the defendants were to receive no compensation or commissions, then the defendants would be bailees for the benefit of the bailor only, and hence liable for only gross negligence.

3. That defendants would not be guilty of gross negligence in case they were informed of the intended removal of the cotton by a third party, and failed to protect the same—gross negligence being such negligence as is akin to fraud.

4. If plaintiff placed and allowed the cotton to remain on the platform exposed and unprotected, he is guilty of contributory negligence and cannot recover.

The court instructed the jury to inquire whether defendants received a bale of cotton to sell on account of plaintiff, as alleged in the complaint; and if the bale was not delivered to defendants, but was merely put on the platform to remain until defendants saw plaintiff, or until defendants got ready to sell under plaintiff's instructions, the defendants had not received the bale and were not liable to plaintiff for its value.

The court charged further: If the jury find that defendants received the cotton, then as to damages: The right to recover damages depends upon the capacity in which the defendants received it. If it was held by them simply for the accommodation of the plaintiff, they would only be liable for gross negligence or carelessness; but if they took the bale as agents and factors to sell and account for the proceeds, even though they charged no commissions, and if plaintiff was their regular customer, they are liable unless they used all diligence in the care of it—that is, unless they took such care of it as they do of their own property. If they marked their own cotton on that plat-

form, they ought to have marked all which was put in their care, and if they did not take proper care of it, the plaintiff is entitled to recover the value of the cotton, with interest if the jury see fit to give it.

The jury responded to the issues as above indicated, and the defendants appealed from the judgment rendered thereon.

*Mr. R. P. Buxton*, for plaintiff.
*Messrs. McIver & Black*, for defendants.

MERRIMON, J. The exceptions of the appellant are confined to the refusal of the court to give the jury the special instructions as prayed for.

If it be granted that he was entitled to them, the court was not bound to give them in terms, if it gave the substance of them, not impairing their force, or so much of them as the facts of the case warranted: that was sufficient. *Brink* v. *Black*, 77 N. C., 59; *Kinney* v. *Laughenour*, 89 N. C., 365.

Upon an examination of the special instructions prayed for and the charge given to the jury, we think the court gave the substance of so much of them as the defendants were entitled to have.

The defendants contended that they did not receive the bale of cotton in question from the plaintiff; that he placed it on a platform that belonged to a railroad company in the town of Jonesboro, where cotton was placed in quantities by cotton dealers to be sold and shipped; that he carelessly left it there with instructions to defendants to sell it, if the price of cotton should reach eleven cents per pound, or when they might be instructed to do so; that if in any view of the matter, they must be treated as having received the bale of cotton, they did so gratuitously, and only as matter of favor to the plaintiff, and they could be held liable only for gross negligence, and the evidence did not prove such negligence.

The court having reference to these grounds of defence, after

32

recapitulating the testimony, instructed the jury that they must first find whether or not the defendants received the bale of cotton as alleged by the plaintiff. The question whether they did or not was put directly before the jury, with the cautionary explanation bearing upon the evidence, "that if the bale was not delivered to defendants, but merely put upon the platform to stay there until defendants saw plaintiff, or until defendants got ready to sell under plaintiff's instructions, the defendants had not received the bale and were not liable to plaintiff for its value." This instruction embodies the substance of the first special instruction prayed for, except so much thereof as suggested a sale of the cotton to the defendants, and as to that there was not a particle of evidence tending to show such a sale; indeed it was not contended that the plaintiff had sold the cotton to the defendants.

As to the question of negligence, the court instructed the jury that if the defendants received the cotton and it was held by them simply for the accommodation of the plaintiff, in that case the defendants would be liable only for gross negligence or carelessness. This is the substance of the second special instruction prayed for, and is quite as favorable as the defendants were entitled to, for it might well be questioned whether the evidence in any view of it presented such question.

There were no facts in evidence, so far as we can see, and no aspect of the case, that called for the third special instruction prayed for. No witness testified that defendants had notice from any source that a third party intended to remove the cotton, or as to what became of it. Where there are no facts that warrant a prayer for instructions the court ought not to give them.

Nor were there facts in evidence tending to prove contributory negligence on the part of the plaintiff. If there was a delivery of the cotton to the defendants, as the plaintiff alleged, then the evidence showed that they took possession and control of it, and they were chargeable with it. There was no evidence to show that the plaintiff took control of it at all, after it was placed

on the platform by his agent. The fourth instruction was, therefore, properly refused.

The case on the trial presented two leading aspects, one contended for by the plaintiff and the other by the defendants. The court very properly submitted both to the jury, with appropriate instructions as to each. *Long* v. *Pool*, 68 N. C., 479.

Upon a careful examination of the whole charge of the court to the jury, we think that the defendants have no just grounds for complaint. The law applicable to the case was properly expounded by the court, and the matter was mainly one to be determined by the jury.

No error.                                      Affirmed.